COURT OF 
APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-019-CR

  
ERIC 
TREVINO                                                                      APPELLANT
 
V.
 
THE 
STATE OF TEXAS                                                                  STATE
  
------------
 
FROM 
THE 396TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        A 
jury convicted Appellant Eric Trevino of aggravated assault with a deadly weapon 
and sentenced him to four years’ confinement. Appellant complains that the 
evidence was factually and legally insufficient to support his conviction. In 
three points he asserts that the evidence does not show he intentionally or 
knowingly caused bodily injury to the victim by stabbing him with a deadly 
weapon because no knife was found at the scene of the accident. We affirm.
I. 
Factual and Procedural Background
        At 
approximately 10:00 p.m. on October 24, 2001, Shakir Abdulla was driving with a 
passenger, Servon Sadulla, to a friend’s apartment in Fort Worth, Texas, where 
they planned to watch a movie. At the same time, Appellant was “cruising” 
around town with his brother Edward Rodriguez (Edward) in the passenger seat and 
his cousin Rodney Trevino (Rodney) in the back seat. The two cars were 
simultaneously turning left in a dual left-turn lane when their cars narrowly 
missed colliding into each other. From this point on, the parties have different 
versions of the sequence of events that followed.
        Abdulla 
and Sadulla testified that the people in Appellant’s car swore at them and 
“flipped [them] off”. According to Sadulla, Appellant pulled his car in 
front of Abdulla’s car, slammed on the brakes, and shouted further obscenities 
at them. When Abdulla and Sadulla eventually reached their friend’s apartment 
complex, Pennsylvania Place Apartments, they turned into the entry of the 
property. Prevented from entering the complex by a security gate, Sadulla used 
his cell phone to ask their friend to let them in the gate. Before Sadulla could 
reach their friend, Appellant pulled his car into the Pennsylvania Place 
apartment complex behind Abdulla’s vehicle and stopped. Appellant got out of 
the car and ran toward Abdulla, brandishing a knife, while the other two men 
from Appellant’s car walked toward Sadulla. Abdulla and Sadulla got out of 
their car and a fight ensued. Appellant came at Abdulla with the knife while 
Edward and Rodney fought Sadulla.
        Abdulla 
and Sadulla claimed that during the fight, Appellant stabbed Abdulla twice in 
the stomach with the knife. Sadulla used his shirt to slow the bleeding in 
Abdulla’s stomach and attempted to walk Abdulla inside the gate as Appellant 
and his friends continued to punch and shout at them. Soon after they got inside 
the gate, two police officers from the Tarrant County Hospital District arrived 
at the scene. When Appellant saw the police arrive, he ran around the apartment 
office building into the pool area, where they could no longer see him, and 
returned moments later without the knife. Abdulla was taken by ambulance to a 
hospital where he underwent two operations to repair two stab wounds.
        The 
story according to Appellant and Edward is quite different. They agreed that 
there was almost an accident as the two cars turned left at the same time and 
that the parties exchanged words and obscene hand gestures. However, Edward 
testified that as they were driving in front of Abdulla, Appellant turned on his 
right blinker to indicate an upcoming turn into the Pennsylvania Place 
Apartments, where Appellant resided with his wife and two children. When 
Appellant turned his right blinker on, Abdulla did the same, so Appellant 
decided not to turn into the apartment complex in order to avoid a fight. 
Appellant changed his mind, however, and proceeded to the next light and turned 
around. When they returned to the complex, Abdulla was parked in front of the 
gate. Using a keypad at the gate entrance, Appellant opened the entry gate to 
the complex but was unable to actually enter the complex because Abdulla’s car 
was blocking the entry. Appellant got out of the car and yelled at Abdulla to 
move his car. When Edward saw Abdulla and Sadulla get out of their car, he too 
got out of the car because he suspected a fight might start. According to 
Edward, Rodney never got out of the car and even locked the car doors because he 
was scared.
        Appellant 
began to fight with Abdulla, and Edward began to fight with Sadulla. Appellant 
testified that he did not have a knife at any time during the fight, but that he 
shoved Abdulla down on the ground several times in a grassy area where new trees 
were planted that had wires sticking out of them to hold them in place. The 
fight continued until the police arrived on the scene. Appellant admitted that 
he ran behind the apartment office building, but maintained that his hands were 
bloody from the fight and that he merely went around the corner to wash his 
hands in the water fountain.
        Jose 
Duran, a resident of the Pennsylvania Place Apartments, witnessed the 
altercation as he was sitting in his vehicle listening to music. Duran’s car 
was parked just inside the entry gate to the apartments when he first noticed 
two cars pull up. According to Duran, three men from one of the cars and two men 
from the other car got out and began fighting. Duran testified that he became 
concerned when he saw Appellant with a knife in his hand trying to stab one of 
the men in the chest, stomach, and face. Unable to assist the man due to his 
confinement in a wheelchair and no cell phone, he watched Appellant stab the man 
twice. The man fell back, but got up again to avoid the knife as Appellant tried 
to stab him in the shoulder. Just as the fight moved inside the entry gate, the 
police arrived at the complex and the fight ended. Duran testified that, after 
the police arrived, Appellant ran behind the main office of the apartment 
complex with the knife in his hand. Approximately sixty seconds later, Appellant 
returned without the knife, using bad language and pretending that he was the 
victim.
        Fort 
Worth police officer Lawrence Thomas was dispatched to the scene and attempted 
to ascertain what had happened. He noticed that Appellant’s hand was injured 
and asked him what happened and if he needed medical assistance. According to 
Thomas, Appellant declined medical attention and told the officer that he was 
attacked with a knife and his hand was cut when he tried to take the knife away 
from the person. When asked how Abdulla got injured, Appellant stated that he 
must have fallen on the knife. Appellant told Thomas that he did not have a 
knife and never had a knife during the entire fight.
        After 
speaking to Duran and hearing his claim that Appellant ran behind the apartment 
complex office with a knife, Thomas began a search for the knife. Thomas 
searched the gutters of the roof on the office building, the area behind the 
office building, and the adjacent parking lots without finding a knife. Although 
Thomas stated that he looked in every possible place that he could think of, he 
also testified that he did not check an area trash dumpster for the knife.
II. 
Standard of Review
        In 
reviewing the legal sufficiency of the evidence to support a conviction, we view 
all the evidence in the light most favorable to the verdict in order to 
determine whether any rational trier of fact could have found the essential 
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 
U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Burden v. State, 55 S.W.3d 
608, 612 (Tex. Crim. App. 2001). When performing a legal sufficiency review, we 
may not re-evaluate the weight and credibility of the evidence and thereby 
substitute our judgment for that of the fact finder. Dewberry v. State, 4 
S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 
(2000). In determining the legal sufficiency of the evidence, and faced with a 
record that supports conflicting inferences, we “must presume—even if it 
does not affirmatively appear in the record—that the trier of fact resolved 
any such conflict in favor of the prosecution, and must defer to that 
resolution.” Matson v. State, 819 S.W.2d 839, 846 (Tex. Crim. App. 
1991).
        In 
reviewing the factual sufficiency of the evidence to support a conviction, we 
are to view all the evidence in a neutral light, favoring neither party. Johnson 
v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Clewis v. State, 922 
S.W.2d 126, 129, 134 (Tex. Crim. App. 1996). Evidence is factually insufficient 
if it is so weak as to be clearly wrong and manifestly unjust or the adverse 
finding is against the great weight and preponderance of the available evidence. 
Johnson, 23 S.W.3d at 11. In performing this review, we are to give due 
deference to the fact finder’s determinations. Id. at 8-9; Clewis, 
922 S.W.2d at 136. Consequently, we may find the evidence factually insufficient 
only where necessary to prevent manifest injustice. Id. at 9, 12; Cain 
v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).
        To 
make a determination of factual insufficiency, a complete and detailed 
examination of all the relevant evidence is required. Johnson, 23 S.W.3d 
at 12. A proper factual sufficiency review must include a discussion of the most 
important and relevant evidence that supports the appellant’s complaint on 
appeal. Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).
III. 
Discussion
        In 
his first two points, Appellant argues that the evidence was legally 
insufficient to establish that he intentionally or knowingly caused bodily 
injury to Abdulla by stabbing him with a deadly weapon.[2] 
Appellant argued at trial and in this court that, when he shoved Abdulla on the 
ground, Abdulla must have fallen on spike supports for newly planted trees in 
the grassy area where the fight took place. Under a legal sufficiency review, 
the question is whether, viewing the evidence in the light most favorable to the 
verdict, a rational trier of fact could reasonably conclude that Appellant 
intentionally or knowingly stabbed Abdulla with a deadly weapon.
        Abdulla 
testified that Appellant got out of the car and came toward him quickly with a 
knife in his hand. According to Abdulla, Appellant punched Abdulla and then 
stabbed him in the left side by his stomach two times. Abdulla walked backward 
and then fell down. After getting up and trying to reach Sadulla, Abdulla did 
not remember anything until he woke up in the hospital approximately two days 
later.
        Sadulla 
testified that when Appellant got out of his car he “took out a knife and, you 
know, flicked it.” Sadulla stated that he asked Appellant to put the knife 
down and Appellant told him “I’m going to show you who I am.” Because 
Sadulla was fighting with two men from Appellant’s car he did not see 
Appellant stab Abdulla. He first noticed that Abdulla was injured when he saw 
him walking backwards with his hands on his bleeding stomach. Sadulla took his 
shirt off and put it on Abdulla’s stomach to slow the bleeding. According to 
Sadulla, Appellant continued to come after them, saying “come here, this is 
not over yet.”
        Duran 
likewise testified that Appellant brandished a knife during the fight and used 
it repeatedly in attempts to stab Abdulla. According to Duran, Appellant 
continued going after Abdulla even after he stabbed him in the stomach the first 
time:
  
Q. 
So the person who got stabbed, what did he do?
 
A. 
Well, he fell back once and he got up. He was trying to – still fighting up, 
trying to avoid the knife, obviously.
 
Q. 
Was he trying to avoid the knife or was he trying to hurt the other?
 
A. 
Oh, no, no, he was trying to avoid the knife.
 
Q. 
Okay. And what was the person with the knife doing as the person who got stabbed 
fell back?
 
A. 
Like he was trying to stab him in the shoulder, on his left shoulder, from my 
standpoint . . .
 
Q. 
Coming down with the knife?
 
A. 
And to the face and chest.

 
        Despite 
Appellant’s theory that Abdulla must have fallen on tree support stakes, 
Appellant’s sworn testimony regarding the spikes was limited to the following:
  
Q. 
Now, do you remember there being any – back in ‘01 these trees here that are 
now bigger than they were back then, do you remember these trees being little?
 
A. 
Yes, sir. Actually, they had no real leaves on them. They had wires sticking out 
of them to make them – to hold the tree in place straight. They had the wires 
sticking out of them on the – and that’s pretty much all I remember is they 
did have wires sticking out of them.”

 
        M.L. 
Lane, the detective assigned to investigate the case, testified that on October 
30, six days after the incident, he went out to the apartment complex to view 
the scene of the offense and took several photographs, including one that 
depicted some small sapling trees in the area where the altercation occurred. 
Lane testified that he did not see any stakes or spikes holding the trees in the 
ground in those pictures.
        An 
extensive review of the record in the light most favorable to the jury’s 
verdict reveals that any rational trier of fact could reject Appellant’s 
theory that Abdulla fell on tree spikes and find that Appellant either knowingly 
or intentionally caused bodily injury to Abdulla by stabbing him with a knife. Matson, 
819 S.W.2d at 846. We consequently hold that the evidence was sufficient for a 
rational jury to conclude beyond a reasonable doubt that Appellant was guilty of 
aggravated assault with a deadly weapon and therefore was legally sufficient to 
support Appellant's conviction. See Jackson, 443 U.S. at 319, 99 S. Ct. 
at 2789; Burden, 55 S.W.3d at 612. We overrule Appellant’s first two 
points.
        In 
challenging the factual sufficiency of the evidence, Appellant argues that 
Abdulla’s injuries were an accident, possibly caused by falling on tree 
support stakes. Appellant relies on his own testimony that he had no knife, and 
on the fact that the police did not find a knife in the vicinity of the 
altercation, despite an extensive search.
        Abdulla, 
Sadulla, and Duran, all testified that Appellant got out of his car with a knife 
and used it to stab Abdulla. Those same three witnesses also testified that, 
when the police arrived, Appellant ran around the corner with a knife in his 
hand and returned a few moments later without the knife. Although Appellant and 
Edward testified that there was no knife, the jury, as fact finder was free to 
believe or disbelieve them. In light of the undisputed evidence that Abdulla 
suffered two stab wounds to his stomach and the testimony of Duran, a bystander, 
that Appellant repeatedly stabbed Abdulla with a knife, we cannot say that 
Appellant’s testimony that he did not have a knife as well as his theory that 
Abdulla fell backward onto tree support stakes is so weak or so against the 
overwhelming weight of the evidence as to be manifestly unjust. Viewing the 
evidence under the appropriate standard of review, we hold that the evidence is 
legally and factually sufficient to support the jury's verdict. Accordingly, we 
overrule Appellant’s third point.
V. 
Conclusion
        Having 
overruled all of Appellant’s points, we affirm the trial court’s judgment.

  

ANNE 
GARDNER
                                                          JUSTICE

  
PANEL 
B: DAUPHINOT and GARDNER, JJ. and SAM J. DAY, J. (Retired, Sitting by 
Assignment)
 
DO 
NOT PUBLISH
Tex. R. App. P. 
47.2(b)
 
DELIVERED: 
March 11, 2004


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
A person commits the offense of assault if he intentionally or knowingly causes 
bodily injury to another. Tex. Penal Code Ann. § 22.01(a) (Vernon 2003).